IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AKBAR HASSAN-EL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 10-848-GMS |
| ) | |
| DAVID PIERCE, Warden, and ) | |
| ATTORNEY GENERAL OF ) | |
| THE STATE OF DELAWARE, ) | |
| ) | |
| Respondents.[1] ) | |

Akbar Hassan-El. *Pro se* petitioner.

Maria Knoll, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

_Oct 22_, 2013
Wilmington, Delaware

---

[1] Warden David Pierce replaced Warden Perry Phelps, an original party to this case. *See* Fed. R. Civ. P. 25(d).

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Akbar Hassan-El ("Hassan-El"). (D.I. 2; D.I. 6; D.I. 7) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As set forth by the Delaware Supreme Court in *Hassan-El v. State*, 911 A.2d 385, 388 (Del. Oct. 26, 2006), the facts leading to Hassan-El's arrest and conviction are as follows:

> Shortly after 10 p.m. on July 18, 2001, the Wilmington Police responded to a 911 call concerning a shooting at 10th and Madison Streets. When the police arrived, they found a man who had sustained an apparent gunshot wound lying inside a Jack and Jill Ice Cream truck. The victim, Abdullah Alameri, was unresponsive and was pronounced dead a short time after he was transported to Christiana Hospital. Following an autopsy, it was determined that Alameri had died as a result of a single gunshot wound to his chest.
>
> Inside the ice cream truck, the police recovered a 9mm shell casing near the driver's seat and a 25-caliber casing under a floor mat. The police also found a 25-caliber projectile that had lodge itself in the track of a sliding window on the passenger side of the truck. After the truck was processed by the police, it was returned to the Jack and Jill Company in Philadelphia. In the course of cleaning the truck, one of the Company's employees found a second projectile, a 9mm bullet, embedded in a shirt that was located on a shelf in the rear of the truck. The projectile was then turned over to the police.
>
> Shortly after the shooting, the police conducted a neighborhood canvass to find out if anyone living nearby the shooting scene had seen or heard anything. The police also learned that an individual named Keith Flowers had called 911 about the shooting. When the police interviewed Keith Flowers, he told them about an individual named Robert "Whiteboy" Zayas.
>
> During the course of the investigation, the police learned that Zayas had purchased a soda from the ice cream truck driver at 9th and Madison Streets just minutes before the shooting. The police also learned from a Tracida Bailey that her boyfriend Marcus Archy may have had information about the shooting. At the time of the shooting, Archy was living on 9th Street, near the corner of 9th and Madison.
>
> In October 2001, Archy was in jail and asked Bailey to contact the police and tell them Archy had information about the shooting. At trial, Archy testified that he knew

Zayas, Guy and Hassan-El from the neighborhood. Archy testified that on the night of the shooting, he first saw the ice cream truck at the corner of 9th and Madison. He also saw Hassan-El, who told him that "something crazy was about to go down," but did not say what it was.

Archy testified that he saw Guy and Zayas on the sidewalk in front of Guy's house, which was on Madison, midway between 9th and 10th Streets. He also saw Hassan-El walking toward Guy and Zayas. Archy then began walking west on 9th Street, toward his house, when he heard gunshots. He looked up the street and saw Zayas, Guy and Hassan-El running toward 10th Street headed east.

Several minutes later, Archy saw Hassan-El coming down Madison Street. Archy testified that Hassan-El told him that Guy shot the ice cream man. Hassan-El told Archy that Guy had a 25-caliber weapon. Hassan-El also told Archy that he too had fired a shot, but that it did not hit the ice cream man. Archy testified that he did not see any of the three men with a weapon that evening and that Hassan-El seemed shocked about what had happened. A short time after this conversation with Hassan-El, Archy saw Zayas, who also told him that Guy had shot the ice cream man.

Keith Flowers testified at the trial that he had made the 911 call to the police just after the shooting. He also testified that when the police first contacted him, he did not want to get involved with the case and initially told them that he did not know anything about the shooting. At trial, Flowers testified he lived next door to Guy and that he also knew Hassan-El, who lived around the corner on 9th Street. On the evening of the shooting, Flowers had been out looking to buy some marijuana. When he came out of his house, Flowers saw Guy, Hassan-El and Zayas standing on the sidewalk.

Flowers testified that as he was walking toward his house, he saw the ice cream truck parked at the corner of 9th and Madison. He saw the truck continue up Madison Street to 10th Street and then he heard gunshots. He did not see who fired the shots. He saw three people near the truck, whom he identified as Zayas, Guy and Hassan-El. Flowers testified that he did not see their faces, but recognized them by the clothing they were wearing. He then saw the three men run east on 10th Street. He returned to his house to call 911.

Zayas testified that just before the shooting, he had bought a soda and a pretzel from the ice cream man at 9th and Madison. He then realized that the soda was frozen and he wanted to return it. He walked up Madison Street, where he saw Guy and Hassan-El "laying low in-between the steps" and "in the bushes a little bit." According to Zayas, Hassan-El told him about a plan to rob the ice cream man. Zayas told them their idea was stupid. They asked Zayas to flag down the ice cream truck. Zayas testified that he did not want to do it, but he also wanted to exchange his soda.

The ice cream truck pulled over at 10th and Madison, and Zayas went up to the truck and asked to exchange his soda. As Zayas was standing at the window, he watched

> Guy and Hassan-El come up to the truck. They had t-shirts around their faces. He saw Guy with a gun. He did not see Hassan-El with a gun. Hassan-El tried to boost Guy up through the window of the truck. Zayas heard two shots and saw Guy fire a shot that hit the ice cream man.
>
> All three of them then fled down an alleyway that ran behind Guy's house, parallel to Madison Street. Zayas then ran back to the ice cream truck to see about the condition of the ice cream man. A short time later, Zayas approached Archy, and, according to Archy, was upset. Zayas told Archy that both Hassan-El and Guy had fired their guns, but that Guy had shot the ice cream man. Zayas also told Archy that he was scared because he was one who flagged down the truck. Zayas then went home because he was scared.

*Id.*

Hassan-El and Tyrone Guy were indicted on charges of first degree intentional murder, first degree felony murder, possession of a firearm during the commission of a felony, attempted first degree robbery, and second degree conspiracy. *Id.* at 387. Guy and Hassan-El were tried together before a jury in November 2003; that proceeding ended in a mistrial after the jury informed the court that it was unable to reach an unanimous verdict as to either defendant. *Id.*

After the mistrial, the State elected to try the defendants separately. *Id.* On May 27, 2005, a Delaware Superior Court jury convicted Hassan-El of first degree murder, second degree murder, possession of a firearm during the commission of a felony (PFDCF), attempted robbery, and second degree conspiracy. *Id.* at 388. Hassan-El was sentenced to life plus forty-five years in prison. The Delaware Supreme Court affirmed his convictions and sentence. *Id.* at 399.

In June 2007, Hassan-El filed his first motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), which the Superior Court denied. *See State v. Hassan-El*, 2008 WL 3271229 (Del. Super. Ct. July 31, 2008). The Delaware Supreme Court affirmed that decision. *See Hassan-El v. State*, 966 A.2d 347 (Table), 2009 WL 234625 (Del. Feb. 2, 2009). Hassan-El filed a second Rule 61 motion in August 2009. The Superior

Court denied the motion, and the Delaware Supreme Court affirmed that decision. *State v. Hassan-El*, 2010 WL 359697 (Del. Super. Ct. Jan. 27, 2010); *Hassan-El v. State*, 2010 WL 3673003 (Del. Sept. 21, 2010).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or

4

   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the

claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C.

---

[1] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

§ 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011). As recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, when reviewing a habeas claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

### III. DISCUSSION

Hassan-El asserts the following five grounds for relief: (1) ineffective assistance of counsel at trial and on direct appeal; (2) prosecutorial misconduct; (3) plain error; (4) confrontation clause violation; and (5) there was insufficient evidence to support his conviction.

The State contends that claims two, three and four should be denied as procedurally barred, and claims one and five should be denied for failing to satisfy § 2254(d).

### A. Claim One: Ineffective Assistance of Counsel

In claim one, Hassan-El asserts that his two defense attorneys were ineffective for failing to: (1) file a motion to suppress the .25 caliber bullet discovered at co-defendant's home; (2) effectively cross-examine State witness Marcus Archy; (3) assert on direct appeal the certain issues requested by Hassan-El; and (4) call as a witness the confidential informant who provided a statement to Detective Emory because that statement eventually led to Hassan-El's arrest.

To begin, the court notes that Hassan-El's fourth allegation of counsel error is unexhausted. Although Hassan-El asserted numerous ineffective assistance of counsel claims in his two Rule 61 proceedings, the court has not found any claim alleging that his two defense attorneys were ineffective for failing to call the confidential informant as a witness. At this juncture, Delaware Superior Court Criminal Rules 61(i)(1) and (2) would bar Hassan-El from presenting claim four to the Delaware state courts in a new Rule 61 motion. *See* Del. Super. Ct. Cr. R. 61(i)(1)(a Rule 61 motion "may not be filed more than one year after the judgment of conviction is final."); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding). As such, this particular ineffective assistance of counsel allegation is procedurally defaulted. Hassan-El does not allege, and the court cannot discern, any cause for his failure to present this claim in his two Rule 61 motions. His failure to demonstrate cause obviates the court's need to consider the issue of prejudice. In addition, the court cannot review the allegation under the miscarriage of justice exception to the procedural default doctrine because Hassan-El has failed to provide any new reliable evidence of his actual innocence. Given these circumstances, the court will deny as

procedurally barred Hassan-El's contention that his lawyers were ineffective for failing to call the confidential informant as a witness.

In contrast, Hassan-El raised allegations (1), (2), and (3) to the Delaware Supreme Court in his two post-conviction appeals, and the Delaware Supreme Court affirmed the Superior Court's rejection of those arguments as meritless. Thus, habeas relief will be warranted for these allegations if the Delaware Supreme Court's decisions were either contrary to, or involved an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In this case, the Delaware Supreme Court applied the *Strickland* standard in affirming the Superior Court's denial of Hassan-El's allegations. Thus, the Delaware Supreme Court's

9

decision was not contrary to clearly established Federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Hassan-El's case. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to Hassan-El's ineffective assistance of counsel claims through "doubly deferential" lens. *Richter*, 131 S.Ct. at 788. Notably, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### 1. Failed to file motion to suppress

As explained by the Superior Court when denying Hassan-El's first allegation regarding counsels' failure to file a motion to suppress,

> [a]t the first trial, a motion to suppress the bullet was filed by Defendant Guy and denied by the Court. As counsel note in their affidavits, they did not file a motion to suppress because the Defendant lacked standing to challenge the search of Defendant Guy's residence, and evidence seized by as a result. Additionally, the Defendant cannot claim he was prejudiced by counsel's failure to file a motion that had already been denied by the Court.

*Hassan-El*, 2008 WL 3271229, at *4. The Delaware Supreme Court affirmed this decision because "the record reflects that counsel had no basis for moving to suppress a bullet found in the house of Hassan-El's co-defendant." *Hassan-El*, 2009 WL 234625, at *2.

On habeas review, the court must defer to the Delaware Supreme Court's interpretation and application of Delaware law. Given the Delaware Supreme Court's conclusion that Hassan-

10

El lacked standing to file a motion to suppress evidence found in his co-defendant's house, and the fact that Hassan-El provided nothing but vague and conclusory assertions in this proceeding to oppose that finding, the court cannot conclude that trial counsels' failure to file a motion to suppress was objectively unreasonable. Moreover, considering that the trial court denied Tyrone Guy's motion to suppress in the first trial, when Guy arguably had more standing than Hassan-El to suppress the admission of a bullet that was found in his (Guy's) home, Hassan-El cannot demonstrate prejudice. Accordingly, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying the first allegation of claim one.

### 2. Ineffective cross-examination of the State's witness Marcus Archy

In his next allegation, Hassan-El contends that defense counsel failed to effectively cross-examine Marcus Archy and prove that he was lying when he testified that he did not have a deal with the State. He also contends that defense counsel failed to use documents to show that Archy "was a paid informant [who] lied about leniency given him for his testimony and for his cooperation with the criminal investigation proving that Archy was committing perjury on the stand." (D.I. 6 at 9)

The Delaware State Courts denied relief on this claim after holding that counsels' representation was objectively reasonable and that Hassan-El was not prejudiced by counsels' cross-examination. The Superior Court specifically concluded that "Archy was thoroughly cross-examined by counsel as to the plea agreement he entered into with the State, and despite his proclaimed ignorance of a "deal," the jury was presented with sufficient facts to draw their own conclusions about his credibility." *Hassan-El*, 2008 WL 3271229, at *2. The Superior Court also determined that Hassan-El was not prejudiced, because he actually benefitted from Archy's poor performance while under cross-examination. *Id.* The Delaware Supreme Court

11

affirmed that decision, holding that there was no "factual basis for Hassan-El's claim his counsel failed to properly cross-examine the State's witnesses." *Hassan-El*, 2009 WL 234625, at *2.

A review of the record reveals that defense counsel thoroughly and persistently confronted Archy with the details of the "deal" he made with the State and the details of the lenient sentences he received. Consequently, even if Archy perjured himself when he denied having any knowledge of these matters, defense counsel presented sufficient facts during cross-examination to make it clear to the jury that Archy was not completely candid. In other words, counsel appropriately undermined Archy's credibility. Viewing these circumstances through the doubly deferential lens applicable on habeas review, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying the instant claim.

### 3. Failed to assert on direct appeal issues requested by Hassan-El

In his third ineffective assistance of counsel allegation, Hassan-El contends that his attorneys were ineffective for failing to assert on direct appeal claims asserting the free-standing arguments he asserts in this proceeding, namely, prosecutorial misconduct, confrontation clause violations, and plain error. He also contends that counsel failed to raise on direct appeal the argument that the State used paid informants to testify.

The Superior Court denied this Hassan-El's complaint about appellate counsels' alleged ineffectiveness, explaining:

> [i]t is within the province of counsel to make reasonable decisions as to which appealable grounds have the most merit. Both trial and appellate counsel are not simply a spokesperson for the Defendant to be manipulated at his whim. They are bound by their professional responsibility to use their independent and legally trained judgment to determine appropriate trial strategy and what matters to appeal. Simply because the Defendant disagrees or would have preferred additional arguments or decisions to be made does not provide a basis to grant a Rule 61 petition. The Court finds counsels' conduct to be reasonable under the circumstances and therefore this claim fails the first prong of *Strickland*. While the Court need not address the prejudice prong of the

12

> *Strickland* test, it notes that counsels' process of "picking and choosing" which of Defendant's questions to use on cross-examination was most likely to his benefit, as it prevented repetitive, irrelevant or damaging testimony.

*Hassan-El*, 2008 WL 3271229, at *5. The Delaware Supreme Court affirmed that decision, holding that "the record reveals no factual or legal support for his claim that his counsel failed to raise the proper issues in his direct appeal." *Hassan-El*, 2009 WL 234625, at *2.

It is well-settled that claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal are generally viewed as strategic,[1] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000). In their Rule 61 affidavits, both defense attorneys explain that they identified those issues they believed had merit, and did not raise on appeal those issues they determined lacked merit. Nothing in Hassan-El's repetitive, vague, and conclusory assertions in this proceeding demonstrate that counsels' determinations regarding which claims to raise on appeal were objectively unreasonable or that he was prejudiced by counsels' actions. Accordingly, the court will deny allegation three for failing to satisfy § 2254(d)(1).

## B. Claims Two and Three: Prosecutorial Misconduct & Plain Error

In claim two, Hassan-El contends that the prosecutor engaged in misconduct by: (a) knowingly suborning perjury by not providing the jury with a copy of the plea agreement between the State and its witness Marcus Archy, and by allowing Archy to testify falsely; (b)

---

[1] *See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999)(counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

13

allowing State witness Officer Lawson to offer an opinion as to the credibility of defense witness Natasha Cooper; and (c) making improper comments during closing statements. In claim three, Hassan-El contends that the trial judge committed plain error by failing to correct the alleged prosecutorial misconduct despite defense counsels' objection. Hassan-El presented these claims to the Superior Court in his two Rule 61 motions. However, the Superior Court denied them as barred under Delaware Superior Court Criminal Rule 61(i)(3) because the claims were not presented to the Delaware Supreme Court on direct appeal. *See Hassan-El*, 2008 WL 3271229, at *1; *Hassan-El*, 2010 WL 359697, at *2. The Delaware Supreme Court affirmed those decisions. *See Hassan-El*, 2009 WL 234625, at *2; *Hassan-El*, 2010 WL 3673003, at *1.

By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claim two absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Hassan-El attempts to establish cause by blaming defense counsel for not presenting these issues on direct appeal. Although an attorney's failure to properly preserve or present a claim on direct appeal can constitute cause to excuse a procedural default, counsel's performance must rise to the level of constitutionally ineffective assistance. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)(holding that counsel's ineffectiveness in failing to properly preserve claim for review in state court will suffice to establish cause). As previously discussed, counsel did not

14

render ineffective assistance by failing to assert on direct appeal Hassan-El's allegations of prosecutorial misconduct or his argument that the trial court committed "plain error" in permitting the prosecutorial misconduct to go uncorrected. As such, Hassan-El has failed to demonstrate cause for his default of claims two and three.

In the absence of cause, the court will not address the issue of prejudice. Additionally, the court concludes that Hassan-El's default should not be excused under the miscarriage of justice exception to the procedural default doctrine, because he has not provided new reliable evidence of his actual innocence. Accordingly, the court will deny claims two and three as procedurally barred.

### C. Claim Four: Confrontation Clause Violation

Claim four asserts that Hassan-El's rights under the Confrontation Clause were violated because Detective Lawson was permitted to read before the jury an out-of-court statement by a state witness, John Rice, despite Rice's repudiation of that statement on the stand. The record reveals that Hassan-El did not exhaust state remedies for this claim because he never raised the confrontation clause violation argument as an independent substantive claim in any of his state court filings.[2] At this juncture, Delaware Superior Court Criminal Rules 61(i)(1), (2) and (3) would bar Hassan-El from presenting claim four to the Delaware state courts in a new Rule 61 motion. *See Lawrie*, 9 F. Supp. 2d at 453 (Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); *Bright*, 218 F. Supp. 2d at 580 (Rule 61(i)(3) would bar the

---

[2]The court notes that claim eighteen of Hassan-El's second Rule 61 motion alleged that counsel provided ineffective assistance by failing to raise the alleged confrontation clause violation as an argument on direct appeal. (D.I. 13, Appellant's Op. Br. in *Hassan-El v. State*, State No. 57,2010 at 41-44). However, asserting a claim of ineffective assistance of counsel based on counsels' alleged failure to raise a confrontation clause argument did not "fairly present" the underlying confrontation clause argument for exhaustion purposes. *See Willis v. Vaughn*, 48 F. App'x 402, 406 (3d Cir. 2002).

Superior Court from considering the claim because Petitioner did not raise the claim in the proceedings leading to his conviction). Consequently, the instant claim is procedurally defaulted, and the court cannot review its merits absent a showing of cause and prejudice, or that Hassan-El is actually innocent.

To the extent Hassan-El attempts to establish cause by blaming counsel for not presenting this argument on direct appeal, it fails; as previously discussed, defense counsels' failure to present this issue on direct appeal did not amount to constitutionally ineffective assistance of counsel. The court will not address prejudice and, for the same reason already provided, concludes that Hassan-El's default cannot be excused under the miscarriage of justice exception to the procedural default doctrine.

Accordingly, claim four will be denied as procedurally barred.

### D. Claim Five: Insufficient Evidence

In his final claim, Hassan-El appears to argue that there was insufficient evidence to support his convictions for felony murder, conspiracy, and attempted robbery, because there was insufficient evidence to support his conviction for attempted robbery. He specifically contends that "no evidence of a robbery or an attempted robbery existed except the self-contradicted testimony of the State's alleged eye-witness Zayas, who knowingly lied and told several different stories to the police." (D.I. 7 at 1)

After asserting that Hassan-El raised numerous sufficiency of the evidence claims in the Delaware courts, including a claim in his direct appeal, the State alleges that the court must review this claim under § 2254(d)(1). The court, however, respectfully disagrees with the State's implicit determination that the Delaware state courts adjudicated the instant claim on its merits. To begin, the record reveals that Hassan-El did not present this particular argument to the

16

Delaware Supreme Court on direct appeal.[3] Rather, in his first Rule 61 motion, Hassan-El contended for the first time that there was insufficient evidence to support his conviction for felony murder and conspiracy. The Superior Court denied the claim as procedurally defaulted under Rule 61(i)(3) because he did not raise the argument on direct appeal,[4] and the Delaware Supreme Court affirmed that decision. Then, in his second Rule 61 motion, Hassan-El contended for the first time that there was insufficient evidence to support his robbery conviction. The Superior Court denied the claim as time-barred under Rule 61(i)(1) and as procedurally barred under Rule 61(i)(4), and the Delaware Supreme Court affirmed this decision. *See Hassan-El*, 2010 Wl 3673003, at \*1.

Given the Delaware Supreme Court's explicit application of Rule 61 to Hassan-El's arguments, the court concludes that the instant insufficient evidence allegation is procedurally defaulted. Hassan-El appears to attempt to establish cause by blaming defense counsel for

---

[3] For instance, in his first argument on direct appeal, Hassan-El contended that his conviction for felony murder should be vacated as a matter of Delaware state law. He presented the argument as one of statutory interpretation, and asserted that the murder was not committed "in furtherance of" the attempted robbery because it did not help move the felony of attempted robbery forward. In his second appellate argument, Hassan-El contended that the trial court erred as a matter of Delaware state law when it instructed the jury that Hassan-El could be found guilty of felony murder if the murder was a "foreseeable consequence" of the underlying robbery. Neither of these arguments challenged the sufficiency of the evidence at trial, and Hassan-El never mentioned the Supreme Court precedent governing sufficiency of the evidence claims, *Jackson v. Virginia*, 443 U.S. 307 (1979), or engaged in the type of analysis undertaken when challenging the sufficiency of the evidence. Further support for this conclusion is provided by the fact that the Delaware State Courts explicitly applied Rule 61(i)(3) and refused to review the merits of claim five as raised in his Rule 61 proceedings because Hassan-El did not present the insufficient evidence argument on direct appeal. These circumstances demonstrate that Hassan-El never "fairly presented" this claim to the Delaware Supreme Court in a manner permitting the state supreme court to review the claim on its merits. Consequently, the deferential standard of § 2254(d) is inapplicable to claim five because the Delaware Supreme Court did not adjudicate the claim on its merits.

[4] *See Hassan-El*, 2008 WL 3271229, at \*3.

failing to raise the insufficient evidence argument "correctly." (D.I. 2 at Ground Four (c)(2)) However, neither of Hassan-El's two Rule 61 motions alleged that defense counsel were ineffective for failing to make the instant insufficient evidence argument in the "correct manner." As a result, this particular ineffective assistance of counsel claim is itself procedurally defaulted and cannot constitute cause for Hassan-El's procedural default of the underlying insufficient evidence claim.

In addition, for the same reasons previously discussed with respect to Hassan-El's procedural default of claims two and three, the miscarriage of justice exception to the procedural default doctrine is unavailable. Accordingly, the court will deny as procedurally barred claim five.

### E. Motion for an Evidentiary Hearing

During the pendency of this proceeding, Hassan-El filed a motion requesting the appointment of counsel. (D.I. 16) Given the court's conclusion that the instant petition does not warrant relief, the court will deny the motion as moot.

### IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of

18

reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Hassan-El's petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Hassan-El's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.